ADDISON v. PACIFIC COAST MILLING CO. et al.

(Circuit Court, D. Washington, N. D. March 26, 1897.)

1. CORPORATIONS—LIABILITY OF STOCKHOLDERS.
    Each stockholder in a corporation is liable to its creditors for the full amount of stock issued to him which has not been actually paid into the treasury of the corporation in money or money's worth.

2. SAME—STOCKHOLDER'S LIEN FOR WAGES.
    The claim of a stockholder in an insolvent corporation to a statutory lien for wages will not be allowed where his liability for stock not fully paid far exceeds the amount of his claim.

3. SAME.
    Where the manual labor performed by one who was employed by a corporation as a general manager and employer of labor was merely incidental to his connection with the company, and the incentive thereto was his interest as a sharer in expected profits, the labor does not come within the intent or scope of the statutes of the state of Washington creating liens for wages.

In Equity. Hearing on a petition by Evelyn Ayerst, as assignee of E. A. Ayerst, to establish a lien upon lumber in the custody of a receiver of an insolvent corporation. Petition denied.

Fairchild & Bruce, for petitioner.
Kerr & McCord, for receiver.

HANFORD, District Judge. Having considered the evidence and arguments for and against the claim of Evelyn Ayerst, to establish a preference right against the assets of the insolvent corporation, the Pacific Coast Milling Company, as the assignee of her father, E. A. Ayerst, which petition sets up a lien upon the lumber and manufactured product of the company's mill, for wages alleged to have been earned by E. A. Ayerst during a period of eight months immediately preceding the appointment of a receiver herein, I find that the assignor, E. A. Ayerst, is the real party in interest in prosecuting this claim. Whatever their respective rights may be as between themselves, the petitioner cannot claim, against creditors of the insolvent corporation, any rights superior to or different from those which her father himself might assert. The testimony is altogether too vague and indefinite, as to any actual consideration for the assignment of the claim, to entitle this petitioner to any particular favor as a bona fide purchaser of the claim.

Touching the merits of the claim, the facts, as disclosed by the evidence, are that E. A. Ayerst was one of the principal promoters of the milling company, and, upon the incorporation of the company, he received one-half of its capital stock, of the par value of $25,000, and that his entire contribution to the capital of the corporation, other than his services as an officer and manager, was only $5,000. It is claimed that the stock was issued as full paid-up stock, in consideration for the mill and manufacturing plant, the title to which was transferred to the company. As against creditors, however, that transaction cannot be sustained in a court of equity. The mill was purchased from the Pacific Coast Trading

Company for $13,500, and paid for by a first mortgage to the Bennett National Bank, for $8,500, and a second mortgage to the vendor, for $5,000; and the only payments on account of these several mortgages were made out of the earnings of the mill. It is shown that a large amount has been expended in betterments and repairs and the acquisition of new machinery, but the testimony fails to show that Mr. Ayerst made any contribution towards payment for the betterments, repairs, and new machinery, other than the $5,000 above mentioned, and his services. The capital of a corporation is a trust fund for the payment of debts of the corporation, and each shareholder is liable to its creditors for the full amount of stock issued to him, which has not been actually paid into the treasury of the corporation in money or money's worth. The corporation is insolvent, and its debts exceed by a large amount its total assets, and for the deficit Mr. Ayerst is liable to the creditors to the extent of the difference between the par value of his stock, and the aggregate amount of money which he has put in, and all sums of money due to him as a creditor on account of services and cash payments. After giving him credit for all that he can possibly claim, the amount of his liability greatly exceeds the credits in his favor. In view of this state of affairs, it would not be according to equity to allow this preference claim to diminish the assets available to pay the debts of the corporation.

The validity of the lien is assailed on various other grounds, all more or less substantial. I will refer to but one. There was no contract to pay Mr. Ayerst the salary which he claims. His testimony, to the effect that there was an understanding between the trustees and himself that his salary should be $100 per month, is insufficient to establish a contract, for there was no definite assent by the trustees as a board, nor by any authorized agent of the corporation, to any such understanding. In so far as the testimony tends to prove a contract fixing the amount of his salary, it is contradicted by the notice and claim of lien, which Mr. Ayerst verified and placed on record, in which he sets forth, as one of the terms of his contract, that the corporation agreed to pay him what his services should be reasonably worth. In his account on the books of the corporation there are no credits for salary, and statements were at different times rendered to creditors, which failed to show any indebtedness to him for salary. There being no express contract, it is next in order to inquire whether there is an implied contract upon which a valid claim can be founded. Mr. Ayerst was a general manager and employer of labor for the corporation. Whatever actual manual labor he may have rendered in assisting in the production of shingles or lumber was merely incidental to his connection with the company, and the incentive thereto was his interest as a sharer in expected profits. Such labor does not come within the intent or scope of the statutes of this state creating liens for wages. Campbell v. Manufacturing Co., 11 Wash. 204–207, 39 Pac. 451. The testimony fails to show the time given to manual labor, or any data upon which an estimate of its value can be made. Hence there can be no implied contract

to pay any definite rate of wages. An order will be entered denying the petition, and awarding to the receiver the costs made upon the petition.